HENRY B. HUNT *et al.*, Appellants, *v.* HENRY W. BLODGETT, Appellee.

APPEAL FROM LAKE.

A conveyance to an infant, for the purpose of defrauding creditors, will be set aside.

THIS was a bill in chancery filed by appellee against the appellants in the Circuit Court of Lake county, setting forth that on or about the 28th day of November, A. D. 1842, Burleigh Hunt purchased of Lake county lots 4, 9, the north half of 5 and the north half of 8, all in block 25, in the town of Waukegan, as marked and designated on the plat of the town made by the county commissioners ; that Burleigh Hunt paid said county $45, or thereabouts, for said real estate, and that on the 28th day of November, 1842, said county by its agent conveyed the above described premises, at the instance of Burleigh Hunt, to his son, Henry B. Hunt, who was then an infant of about five years of age ; that Henry B. Hunt had never made any conveyance of the property. The bill charges that neither Henry B. Hunt nor any person for him, ever paid any of the consideration for said deed

to Burleigh Hunt or to Lake county, but that the entire consideration, upon which the deed was executed, was paid by Burleigh Hunt, and that the deed was executed as above stated, at the instance of Burleigh Hunt, for his own use and benefit, and for the purpose of defrauding his creditors, to whom he was then largely indebted, and thereby pecuniarily embarrassed. The bill further states, that on the 1st day of September, 1845, James B. Gorton recovered judgment in the Circuit Court of Lake county against Burleigh Hunt for $21 costs, in a suit in chancery of Gorton against Hunt; and on the same day Gorton recovered judgment in same court against Burleigh Hunt for $22 in a suit in chancery of Hunt against Gorton; that on the 27th day of January, 1848, writs of execution were issued on said judgments, directed to sheriff of Lake county, who levied upon the above described premises, and on the 21st day of February, 1848, sold the same to James B. Gorton for $53.39 and executed the usual certificate of sale; that on the 1st day of May, 1849, Gorton, for the consideration of $59.77, assigned the certificate of sale to the orator, and that the sheriff of Lake county, on the 26th day of May, 1849, executed a deed of the premises to the orator in pursuance of said sale.

The bill then charges that, at the time of the rendition of said judgments, Burleigh Hunt was the sole equitable owner of the premises, and that the legal title to the same was vested in Henry B. Hunt, as trustee of Burleigh Hunt; that the orator had succeeded to the equitable rights of Burleigh Hunt, by said sale and purchase, and that Henry B. Hunt then held the legal title in trust for him. The bill further charges that said conveyance was not made to Henry B. Hunt as a gift.

An answer under oath is waived, and the bill prays a release from the defendants of the premises, that they be enjoined from conveying, and for further relief.

Burleigh Hunt filed his answer, therein admitting that on the 28th day of November, 1842, he purchased the above premises of Lake county, and paid said county therefor forty-five dollars, or thereabouts, but says he did not purchase the premises in his own right, but as guardian or trustee of Henry B. Hunt, and shortly after the purchase, as such guardian or trustee, paid to said county the full amount of the purchase money; and further admitting that on the 28th day of November, 1842, Nelson Landon, who was a commissioner of Lake county for that purpose, at the instance of Burleigh Hunt as such guardian, executed a deed of the premises to Henry B. Hunt, an infant child of his of about five years of age. He denied the allegation that no consideration was ever paid by Henry B. Hunt, nor by any person for him, to Burleigh Hunt or to said county, and averred

that the consideration upon which the deed was made, was fully paid by Burleigh Hunt, as guardian or trustee of Henry B. Hunt, out of moneys or county orders purchased with moneys furnished by him for the express purpose of purchasing said real estate. He denied that he had or ever had any interest, legal or equitable, in the moneys, county orders or funds, which were paid for the premises, or any interest, legal or equitable, in the premises at the time of the purchase, or at any time thereafter, and averred that he held said county orders and moneys as such guardian or trustee, and made the purchase in that character with such moneys and county orders, which belonged to said Henry B. Hunt, in his own right.

He denied the allegation that the conveyance was made with an intent to defraud creditors, but admits his indebtedness—has no knowledge of the recovery of the judgments, issuing of executions, levies or sale thereon, nor of the certificate of purchase, assignment of same to orator, or of sheriff's deed. He avers that he has been duly appointed guardian of Henry B. Hunt, and that the assignment to orator of sheriff's certificate was colorable and without consideration; that Blodgett was a mere trustee of Gorton, and prayed that Gorton might be made a party to the bill, and answer the premises.

Gorton filed his answer, admitting the allegations of the bill—denying that he had any interest in the controversy—and averring that the sale and assignment of the certificate to Blodgett were *bona fide* and upon the terms mentioned in the bill.

The proof sustained the allegations of the bill.

The decree was entered by MORRIS, Judge, at October term, 1853, of the Lake Circuit Court.

H. P. SMITH, for Appellants.

C. BECKWITH, for Appellee.

CATON, J. We agree with the Circuit Court that the evidence shows that the premises in question were purchased by Burleigh Hunt for his own benefit, and that he had the conveyance made to his infant son for the fraudulent purpose of putting it beyond the reach of his creditors. In 1841, when the property was purchased from the county, Burleigh Hunt was insolvent, with several very considerable judgments against him. When the lot in question was offered at public sale, he and Gorton bid upon it till it was finally struck off to him at two hundred dollars. This was more than four times the value of the lot, and of course the bid was forfeited. A few days after, he bought the lot at private sale, of the county, for forty-five dollars. He took a bond in

his own name, and at that time mentioned no one else as purchaser, so far as is shown by this testimony, and such is the recollection of the county agents, with whom he did the business. He paid for the land, as is most probable from the evidence, in a kind of scrip or paper which had been issued by the county, and was receivable in payment for county lands. When a conveyance was made of the lot, it was conveyed to his son Henry B. Hunt, who was then a child, four or five years of age. This is the first that any thing reliable is heard of this child in the transaction. There is no appearance here of a *bona fide* investment of trust funds for the benefit of his infant child. The spirit and competition manifested at the biddings, by which the property was run up to more than four times its real value, is inconsistent with an agency or a trust transaction, acted in good faith. Every feature of the operation shows that this was a purchase made by Burleigh Hunt for himself, and that he took the conveyance to his son, for the purpose of putting it beyond the reach of his creditors.

But the testimony of Hiram Hodger stands in the way of this conclusion, and if it is to be taken as true, and the transaction of which he speaks was a real and *bona fide* gift, and not a mere colorable operation, the better to conceal the intention of Burleigh Hunt in his contemplated purchase of this lot, then it would go very far to show, if it would not satisfactorily establish, that this lot was in good faith purchased with funds belonging to the child, and for his benefit. He states that, a short time before the sale of these lots, he was at the house of Burleigh Hunt and saw a woman, whom he understood to be some connection of B. Hunt's wife, give him fifty dollars for Henry B. Hunt, which he promised to invest in lots at this sale, for, and in the name of, the boy. We may be doing great injustice to Mr. Hodger and to Henry B. Hunt, but we cannot resist the conviction that this is all a fabricated story, or more likely, the facts may be as stated, but the transaction itself a fictitious one, in which the formality of paying over money was gone through with, for the purpose of getting up a defence to just such a case as this, and to enable Burleigh Hunt the more securely to place his property beyond the reach of his creditors. The great facility with which such deceptive appearances may be got up, must always induce a court or jury to look upon them with suspicion, and require the party relying upon them, at least to produce all the proof, which may reasonably be supposed to be in his power, of the reality and fairness of the transaction. Here we have the naked transaction itself testified to, without any corroborating circumstances, and by a witness, too, who shows a disposition to testify altogether too much upon confidence, for he states

in another part of his deposition that he knows this money was invested in the purchase of lots in Waukegan by Burleigh Hunt, while he afterward admits that he does not know when or how the lots were paid for.

Where is this woman who gave this money to Henry B. Hunt? Why is she not produced as a witness to vindicate the reality of this transaction? or, at least, why is her absence not accounted for? Or why is not Burleigh Hunt, the father of the boy, produced to show that he had not furnished that same money, to be given back to him, in the presence of a witness, for the purpose of getting up a colorable case? Nothing of this kind was done, and no attempt made in the testimony to show why it was not done. Should we require nothing more than is shown in this case to protect a man's property from the reach of his creditors, we should but invite the continual perpetration of frauds. Transactions surrounded with so many suspicious circumstances demand at the hands of this court the most rigid scrutiny, and cannot be passed by without the fullest explanation, which at least the party may reasonably be supposed to have in his power to give. If, as was suggested in the written argument, the woman is dead, that could have been shown, and no satisfactory suggestion is even made why the testimony of Burleigh Hunt was not produced. I have laid out of view all the declarations and conduct of Burleigh Hunt, which transpired after the deed was made to Henry B. Hunt, for then the transaction was completed and his agency ceased, and the grantee should not be bound by any thing which he did or said afterwards.

We are satisfied with the decree of the Circuit Court, which must be affirmed.

<em>Decree affirmed.</em>